Our last case this morning, but not our last case today, is Mon Cheri Bridals v. Wen Wu at all. Mr. Pasilico. I was going to say that. Yes, I'm here representing all appellants, and I'm not dividing my argument at all. My arguments apply equally to each, and I would ask that, Your Honors, it would be okay if I reserve five minutes. That request will be granted. Thank you. At its bottom, Your Honors, this case is a copyright infringement case. There are other aspects of it, but the essence of the case all has to do with copyright infringement. And after a week-long trial, approximately, after much briefing by both parties, which have produced a lot of documents, we have a large stack here, there's only one document that can be said with any degree of certainty was a document that was actually created by the purported author of the works that are the subject of the registrations in this case. There's 29 copyright registrations, but there's only one document provided by the purported author. And that document is a very simple line sketch of a dress with general indications that there are to be embroideries on the dress, but no specifics. And that's an important distinction because there's not copyright protection available for dresses. Copyright protection for a dress is not possible because dresses are useful articles, and a copyright statute excludes that. So what we have here are 29 copyright registrations which depict very detailed embroidery patterns, and the evidence in this case is completely absent that those embroidery patterns are the work of the purported author. At best, at absolute best, the evidence would establish that those works are derivative works. In other words – Well, it's not sufficient for a copyright. Derivative works are works that are already in the common good. Yes, Your Honor, there's certain – And that was her position. That was Mon Cherie's position. These were derivative patterns that were reworked in different fashions and different bead designs and colors. Well, I would say there's two things. There's – to answer your first question, you're absolutely correct. There is – copyright protection is available as a matter of general course for derivative works. However, the requirement of originality still is present. So while the derivative works as a category are copyrightable, you still have to establish that what has been changed from the underlying work embodies some originality. You didn't really press this at trial or before trial, though. How can you argue that you were harmed when you voluntarily withdrew your in limine motion and did not raise this issue again until post-trial judgment? Well, we did raise this issue at trial, Your Honor, and we had many objections. You withdrew the in limine motion concerning this very subject, though. Well, we withdrew the in limine motion directed to the appearance of the dresses. In other words, there's a couple of issues here. This is a relatively complicated case. Yeah, I know, but involved in that is the underlying right to have to copyright these designs. Well, and that's what I'm trying to get at. There's really two issues. One is that we had a problem originally with the fact that the jury would see the dresses when the copyrights are not possible on the dresses, on the theory that they would look to the dresses as a whole for evaluating the copyright protection. That was one issue. But the second issue, we never banned it. Can you copyright a dress? You can't copyright the style of a dress. It's, you know, the cut. And again, that's because it's a useful article. You can copyright, it's perfectly proper to get copyright protection on the embroidery patterns. On the fabric. On the fabric. And we never dropped that. Our contention always was, and there's a two-fold problem here. Number one, it's, while it is certainly certain that a copyright registration creates a presumption that the underlying work is a copyrightable work, that presumption is not inviolate. And the reason for the presumption is because there's an assumption of regularity in the preparation of the application and the following of rules and regulations in its issuance. In this case, we demonstrated that that presumption is not properly taken in this case for two reasons. One is not a single one of those 29 registrations indicated properly that it was a derivative work. Every single one of them left off that critical bit of information. So no one at the Copyright Office was aware that these were being claimed as derivative works. But you never proved that there was any actual bad faith or fraud involved in it. And they acknowledge it was an oversight. And the copyright law is very clear. Unless they had intention to commit a fraud on the office, their casualness or recklessness in not advising the Copyright Office that it was derivative is not fatal to their copyright claim. I agree. There has to be evidence of intentional deceiving of the Copyright Office, but that doesn't have to be direct evidence. The evidence that can be brought to bear can be inferential. And I think if you look at the overall circumstances in this case, there's strong evidence that creates really the conclusion that there's only one reason the acts in this case happened the way they did, and that was to not permit the Copyright Office to have access to the critical bit of information. And I know that in the case cited by the appellees, there's a very important and critical distinction. Number one, it was one registration. And, yes, there was a derivative work that was not identified. But in addition to the fact that it's only one as opposed to 29, in that particular case, the work on which it was derived was the work of that very same author. That was demonstrated and not contested. Here we have 29 registrations. The evidence is very clear that Mr. Lang, who was the person who signed each of those 29, were present during the process of the derivation of the work. But the proof that it wasn't an original design, you didn't pursue the original drawings and workups of Dohm at all? Oh, yes, we did, Your Honor. Well, I don't think you, no, didn't you give up that opportunity to see her original renditions and so forth? No, we didn't, Your Honor. We did not give that up. We specifically, a couple of things. One is we specifically asked for an order from the judge ordering that the files of the purported author be searched. And that order was denied. And we never said, okay, we don't ever want to see those files. The problem we had with that, Your Honor, is that there was never any effort to even look at her files. She was never even informed that there were copyright registrations being filed. She didn't even know they were filed, and nobody asked her to look at the files. And we never gave that up. Secondly, Your Honor, we presented the testimony of the author at trial. We went through each of those registrations. And one thing that's important. That was the deposition, the Benny essay you're talking about? That was the, yeah, exactly, Your Honor. Okay, yeah. And we showed that deposition to the jury. Yeah, I read it, yeah. And it might be a little bit confusing because at that deposition we had each of the dresses. And the point there was to have the purported author look just at the embroidery patterns as opposed to the dress. We're not contesting that the author didn't design a dress. We're not saying that. But that's not relevant to this case. The question here is, did she design those embroidery patterns? And in every single instance she said no. In fact, she said the first time that she saw the pattern is when she got to China. And so that's really, really important in this case for two reasons. And both are very important. Number one, nobody in this courtroom today, based on all this record, can say what changed from the underlying work, which she saw when she got to China, to the work that's in the registration. What is that quantum change? Nobody knows. That's a problem in and of itself and renders the registrations invalid. But the second problem, which is just as important, is in order to prove and – Well, why does that make the registration invalid? You have the burden to show that because there's a presumptive validity here. You're right. And that's correct, Your Honor. There's a presumption, but that presumption is not inviolate. And what we did is we came forward with evidence to rebut that presumption. And then the burden shifts to the plaintiff. I don't see how you rebutted it by saying there's no evidence. Well, we rebutted it with the testimony of the author who admitted in her deposition that she was not the originator of any of those embroideries. Yeah, but – I'm sorry. Yeah, but they were worked upon and rearranged and different color schemes and so forth put in. But we don't know. There's general statements, and most of those statements don't even come from the author. They come from the author's boss. You don't know. We don't know. Nobody knows. But you have a burden. You have a copyright that's been issued, and you have the burden to overcome that presumption. Let me knock your red lights on it when I get to another point. Okay. You have an obligation to prepare the appendix. Yes, Your Honor. And part of the problem that I had in reviewing this case is that many of your references are to items that are not in the appendix. We can't find them in the record. You know, what option do we have? You've made reference to points that – I'm sorry, Your Honor. I wasn't aware that there – Can't be found. The transcript isn't filed below. What option do we have? Well, I apologize for that, Your Honor. But I was not aware that any of my references, at least, were not in the appendix. Well, a lot of them. I had to go to the district court to get the – And some of them were in the district court. And some of them were in the district court, right. But I – at the beginning of the appeal, Your Honor, I did order the entire transcript. Yeah. But I only included in the appendix the portions of the transcript that I intended to rely on. Yeah, but the brief referred to things that were not in that appendix. I don't think my brief did, Your Honor. No, they both did. I think – I did notice in Apelli's brief that there were references, but at least as far as I'm aware – You notice them. We notice them. Okay. You know, I don't know if you're – you come from a big firm with multiple offices. And, you know, Rule 30F, which is seldom used in this court, provides for the appeal on the original record without an appendix. I'm wondering, with CMECF in place and all the district courts in our circuit, when firms are going to begin to try to avail themselves of that proceeding so that, you know, you can make reference to what's below and you can make sure that what you need is on record below. You want to look at it? We can go to it. And that's a good suggestion, Your Honor. In this particular case, the record below was quite voluminous, and I just thought it would streamline by not doing that in this case. Tell me what recourse we have if we feel that there is insufficient reference in the appendix. What can we do? We might throw up our hands and rule against you. Well, Your Honor, if that's the case, I would ask if you could identify – I think the – I guess what I'm saying is I've been through the brief and through the appendix, and I think all the critical information is there. I didn't notice in my brief at least anything that was referred to that's not in the appendix. There were citations even in the brief to the appendix when you went to the appendix. As far as my reading is concerned, it didn't support what was cited in the brief. I mean, I thought it was a little – not quite up to what I would expect from a lawyer of your standing. And, again, I think part of the problem, and I kind of acknowledge that, part of the difficulty is some of the citations, especially to the testimony, has to do with the witnesses looking at a particular dress or a particular embodiment, and it doesn't come across very clearly always in the record. Yeah, but to say something in the brief and give a citation to the appendix and say, all right, let me check this out, it's crucial to go to the appendix, and it just isn't there. That's – look, it's not you. I've got some problems with your opponent, too. I'm an opportunity employer. We're giving you – I'm trying to give you an opportunity to say, you know, what do we do without throwing our hands up? And I would say, Your Honor, and I hate to put any burdens on you, but I would be happy to amend or supplement the appendix in any way that you – Well, after us having given you a little tip that it's less than sufficient, you've got a lot of people sitting around over at your firm. Maybe you could figure out what's missing because a comparison of what's there versus what we need might give you the answer. Okay, yes, Your Honor, I would be happy to do that. I'm sorry, I have another question. Yes. The third charge here is breach of contract. Yes. What's your position about that? Well, the breach of contract – Or why was the jury wrong in finding breach of contract? I think it comes back to the copyright question, Your Honor. The basis for the contract count was that there would be infringement of copyright. So if there's no valid copyright and there's no infringement of the copyright, there can't be a breach of the contract. Yeah, but if you contract that said you were not going to duplicate this or pass them off again, aren't you admitting in the contract, I won't violate your copyright? And then does it lie in your mouth to sign a contract like that and then come back and answer Judge Ditter, well, we didn't breach a contract because what we said in the contract, we're not going to breach your copyright. We should have told you we're going to do it because you don't have a copyright. Aren't you talking out of both sides of your mouth then? No, Your Honor, that's actually a very good question because it's very clear that the original contract, the issue of whether there was any copyrighted material was in dispute. So why is it in dispute now? And so the contract, to the extent one exists, and I would say that there's real issues about that in this case, but to the extent a copyright contract can be identified, it was very clearly limited itself to a breach being caused by the infringement of an actual copyrighted work as opposed to just some generalized, you know, I'm not going to copy. And again, the reason for that is because there's been contention from the very beginning about whether or not there's a copyrighted work that's valid in this case. I'm sorry, but wasn't there evidence that there was at least a conversation where Mr. Lange said we won't copy your work, addresses you, we won't copy your line and you won't copy our line. Now, wasn't that a valid contract and wasn't there plenty of evidence that it was breached? I would say in the first instance, Your Honor, yes. There's no mention about copyrights in their conversation. There was a conversation that was then, there was an effort to put into writing. Which was never done. Well, there was a writing that was produced and signed by my client, and that writing has the reference to the copyrighted works. So part of the problem, again, is there's not a clear contract here, and, you know, a conversation that two parties have in Taiwan over coffee, and you're right, there was testimony that sitting down together, they said we'll not try to copy each other's work, but when push came to shove and it had to be put in writing, there was a reference to the fact that there would not be, and the contract says we will not infringe copyrighted works. If the conversation had been in San Francisco over tea, would it have made any difference? I don't think so, Your Honor. We'll have you back on rebuttal. Thank you. Mr. Hilliard. May it please the Court. Excuse me. Craig Hilliard and I represent Appellee Mon Cherie Bridles, and also a cross-appellant in this Court. Perhaps I should start by addressing what I think was Mr. Pasilko's principal argument, which was on the copyright infringement claims. Mr. Hilliard, would you do me a favor and pull your microphone up? Certainly, sir. You never identified it was a derivative work that Dohm was working and creating this pattern from. That is correct, and that is because the principals of Mon Cherie and Ms. Dohm herself, as she testified at trial, believed that these were her original designs and they were not derived from other works. That testimony was clear on the record. Even if it wasn't as clear as it might have been, the jury determined that there was no fraud on the copyright office. They made what was inherently a factual determination that there was no intent to deceive the copyright office. Your friend across the aisle says that, regardless of the jury determination, that there was never anything in the record that reflects that the derivative work was altered and enhanced and patterns and so forth made so as to make it a copyrightable item of original work. You're correct, Your Honor. That is Mr. Pasilko's argument. And what was in the record to show that it was enhanced and made different and a true copyrighted original work? There was ample testimony from both Ms. Dohm, which was presented on videotape to the jury, as well as Mr. Wang, who, importantly, accompanied Ms. Dohm to China and worked with her in developing the final product. There was ample testimony from both of them. What was the ample testimony from Ms. Dohm that she was the originator of anything? Wasn't she asked on several occasions, what did you add to this, and she said nothing. Is this your original one? No. No, what she said, Your Honor, was in response to Mr. Pasilko's question, when he showed her a part of the flower on the principal dress that was at issue number 21917, that took up most of the time at trial. When he showed her that flower, he said, are you the first to actually draw this flower? And she said, you know, I don't think so. But when we went into detail with her, and this was part of her videotaped testimony, on what she did to arrive at the final design, what was her artistic contribution, she went into considerable detail. We started with her sketch, which is the only document that Mr. Pasilko referred to. And it's in the record at appendix 190. And admittedly, the sketch itself, what they called a croquis, was not the most detailed pictorial of the dress. It was her initial sketch. On the right-hand side, written in Chinese, are a whole set of instructions to the factory on how large should the petals be, what color should they be, what types of beads should be used, where should the beads be placed, what type of stitching to use. Those were her instructions to the factory. The factory prepares the initial mock-up. She then goes to China, as she testified, along with Mr. Lang, and they view what the factory comes up with, and she says, no, no, no. That's not what I want. This is what I want. There was detailed testimony in the record on March 31st at page 184 in the transcript from Ms. Dohm, and it carries through for several pages, where on this particular dress, 21917, she testified, quote, I remember giving all details about the embroidery on that style. She gave specific instruction about where to place the flowers going from top to bottom on the dress. She wanted to make the flower look dimensional. So she asked the factory to use two different color threads. She goes on to testify about how many different stitches could be used. She selected a satin stitch. She wanted a monochromatic effect to achieve dimension in the flower. These were extremely, and I realize we don't have the dresses here in court, but they were shown to the jury. And there's no dispute that there was substantial similarity between the dresses. Even their witnesses testified, I can't. Their own designer said, I can't tell the dresses apart. Yeah, the jury obviously ruled, it was before their court, and they ruled in your favor. His position is, as a matter of law, the ruling was incorrect. So, I mean, he's swimming upstream to some extent. But his position is, nevertheless, that it wasn't enhanced or made different enough from the original derivation that it came from. That's correct. As I understand his argument. That's correct. And that is the argument that he made to the jury. They can't show originality. And we obviously argued to the contrary, presented the testimony, including the testimony of Mr. Lang, who wasn't just a boss testifying about what he thought his designer did. He was physically there and witnessed each step of the design process. Now, they argued that his testimony was not credible. The jury, obviously, or I shouldn't say obviously, but the jury took all the testimony into account and made a factual determination, as it can do in a copyright infringement action, that she was indeed the author. Which didn't rebut the presumption and certainly didn't establish fraud on the copyright office. The defendant argued on its motion for judgment notwithstanding the verdict that there was insufficient evidence. And the district court denied that motion. But in its ruling, the district court did not refer to any designs that were produced by the defendants to show that an infringement occurred. By the defendants? Yes. The district court did not refer to any designs produced by the defendants to show that an infringement occurred. And there was no reference. So, in absence of such a comparison, how are we going to conclude whether or not, and without any reference in the record to what the court looked at to determine the motion should not be granted, how are we to make that decision?  There's just a lot of absence of record detail for us to decide this case. Well, I understand that is directed at me as well, and I apologize to the court. They can point us to a sufficiency, at least on a sufficiency question. Well, for you, though, you're standing out to a large extent on the rebuttable nature of the copyright itself and the fact that the jury and the judge had the addresses actually before them. I mean, this is no secret. They saw what was there. And if the defendants wanted to say it's the derived pattern, pure and simple, with not that much difference, you should have made a showing to the jury that, look, this is just the original pattern and they didn't make any real change in it. Well, there was no showing at trial by the defendants that there was any other design which preexisted. These are post-motion also we're dealing with here. Correct. But I think the district court was in the same shoes that the jury was in, which was the defendants did not step forward, with the exception of two of the dresses, 21917 and I think 13668,  The exception of those two dresses, they did not present any evidence that there was any preexisting design from which they claim Ms. Dohm derived her work. There was simply no evidence to rebut the presentation. Did you present evidence that, you know, these dresses showed that there was a copyright infringement? There was no copyright infringement. That there was. That there was. That there was, yes. Did you present evidence? We presented the evidence of the dresses themselves. Yeah. We didn't have all the design drawings, the dresses themselves, the testimony of Mr. Lange and Ms. Corita and the designer herself that she was the one who came up with the designs. Each one started with a sketch with instructions to the factory. We went through each dress. We had them all hanging in the back. There must have been dozens of dresses there. There were dresses all over the courtroom. Yeah. And we had a mirage dress and a montage dress side by side. And as I indicated before, even when I had their own designer, defendant's designer on cross-examination, I said, can you tell the difference between these dresses? But the claim is embroidery design. It's not that the dress looked like some other dress. I agree. The protectability was all in the embroidery. I want to direct your attention to page 198 of the appendix, where Ms. Dohm is asked, were you the first person to draw that pattern on any of these dresses? And she says, at that detail level, I will have to say no. That's correct. Then she's shown, were you drawing sketches of the past that had this detail, that had the same detail? And she says, that's correct. And then she goes on to say later on, were you the first person to draw or write down that particular detailed embroidery pattern? She says no. That's correct. That's correct. My question is, where in the record is there any evidence that she did anything to originate anything? Well, I just cited to the court specific references. Well, she went to China, and it's a little indefinite as to exactly what she did, other than to say, well, put this at this point on the dress. Yes. And that's not copyrightable. Oh, I believe her particular instructions on how to configure what may have been preexisting elements. There are tons of roses and flowers out there. The factories have all sorts of samples that they use. And I think what she was testifying to was, no, I was not the first one to draw this particular flower. I'm not the first one to draw this vine. What I did do, though, was I gave instructions to the factory on what it is that I wanted that final piece of art on the dress to look like, just as in the folio impressions case decided by the second. She said put the embroidery on the left side rather than the right side. Is that something that's copyrightable? Oh, it was much more detailed than that, Your Honor. It was, I want the flower to look like this. I want to bring it out more. I want to extend the petals. I want the vines to look differently. And we're talking about one of the particular dresses. And the beading and the coloring. The beading, the coloring of the beading, the whole artistic impression that the work, and it is separable from the dress itself. We weren't arguing that the dress was copyrightable. No, that's not it. But this was all before the jury as to what this design was on the dress. Correct. Correct. Absolutely, Your Honor. Another point, Mr. Hilliard. I'm concerned about the admissibility of the testimony that was given by Martin about the agent. Dominic. By the name of Dominic. Dominic Giovinella. Yes. And, you know, why shouldn't the court have made an initial determination of agency before that evidence was admitted? I think under Rule 801 D2D, the court, and I believe there is a district court decision, Chemether, that we relied on, which I believe that's the name of the case, Chemether, that held that the issue of agency is a fact issue and it was disputed. And the judge was well within her bounds to allow the jury to determine whether Dominic, in fact, was an agent. At the end of the trial, part of my argument is this ended up being a harmless error because at the end of the trial, based on all the evidence that came out, it was very clear that Dominic was an agent of Mr. Wu and his companies. Mr. Wu himself testified that Dominic was authorized to sell his line in the southwest area in Texas, specifically where Ms. Martin's retail shop was located. Ms. Martin herself, of course, testified not just to what Dominic said, but to the fact that he brought in an order form with Mr. Wu's company's names at the top, filled it out for the Mirage dresses, sent it in, and the dresses were actually shipped from Mr. Wu's headquarters in Fort Myers. Was there any evidence of passing off, actual passing off? I believe there was. What was it? The key evidence on passing off was that the dresses that Ms. Martin got from Fort Myers when she filled out her order didn't have any labels in them. There were no Mirage labels in them. There were no labels at all identifying the manufacturer of the dress when she received the shipment. That was her testimony, and that was credible testimony. She does not say that she ever passed off a Mirage dress as a Montage dress. That's what she says is, if somebody asked for a Montage dress, that's what I would give them. That's correct. What's the testimony that you could pass these off as? They look just like Monturee, and no one will know the difference. They cost less. That's correct. And that was the intention. It was in the record, and certainly the jury could easily have believed that there was an intention based on Mr. Baslow's testimony and Ms. Martin's testimony. There may have been an intention or an opportunity to pass off, but my question is, is there anything to show that there was any actual passing off? We know two things. We know that the dresses were actually shipped without any labels in them, even though Ms. Martin— You're not answering my question. I'm attempting to, Your Honor. I'm sorry. Was there anything to show that somebody said, I want a Montage dress, and they got a Mirage dress instead? Not from a direct customer, Your Honor. There was no evidence of that. But we did have the evidence that the dresses were shipped without labels. We also had the evidence that Dominick told Ms. Martin, we want to do it this way. And, in fact, I'm going online to target all the retailers who use private label, all of the retailers who buy Monturee Montage. That's my target market. I'm going to go to them, just as I went to you, and suggest that without the labels in the dresses, you can pass this off as a Montage dress. Now, we know that the dresses were sold. We know that hundreds and hundreds of these dresses were sold. Do I have evidence of other retailers who actually sewed their labels into the Mirage dresses? No, I do not, Your Honor. But I do know that the dresses were sold. The jury knew that, and they knew that the game plan from the very start was to pass them off. And I believe that was sufficient evidence, without a showing from the defendants that it didn't happen, to establish liability for passing off. My time is up, unless the court has any further questions. Thank you, Your Honors. Mr. Pasilica. General, do you want to address the agency issue involving Dominick? Yes, Your Honor, I will do that. I believe your question is a good one. I think it was not proper, and it was highly prejudicial. The very first witness at the trial, Ms. Martin, for her to be testifying on pure hearsay, there was never an offer of proof at that time or at any time thereafter to establish that Dominick was an agent. I don't think there's any testimony sufficient at any point during the trial to establish that he was an agent of the appellants in this case. There was a mention that he worked for Merage. Well, Merage settled that in this case, and that's a whole other issue. But there's been no establishment of agency, and I think it was improper for the judge to leave it to the jury, really at sea without an oar, as to figure out whether Dominick was an agent. And I think when the testimony is looked at, there's really no testimony that establishes that he is. Well, there was a factual issue that was involved. They proved that there was their position. This was an open question for the jury or the judge to resolve. And, well, on the legal side of it, it seems to be, you know, it's something that I've had to research, and I've dealt with this many times. This is an open question as to whether or not you send this issue to the jury or decide it yourself. There's definitely conflict in the circuits on this. And I would agree with that, Your Honor. And if there's a factual issue, why shouldn't you let the jury decide it, and why should the judge decide a factual issue, which is key to the litigation? A couple of things, Your Honor. At a minimum, there should have been some offer of proof before the jury heard the testimony. Once the testimony is heard, it's too late to take it back. Ms. Martin was, again, the first witness, and she spent half of her testimony talking about what this person Dominick said, who never did have a last name at that point, never showed up at trial. There should have been some gatekeeping activity going on before the jury hears, you know, testimony, whole big chunks of testimony about what somebody might have said, and then leave it to the jury to try to figure out, was that guy an agent without really being told how to make that determination? But wasn't the question put fairly to the jury in the instructions of the jury? I mean, I don't think so, Your Honor. Well, how was the charge inadequate in framing the question? The jury could have decided either way they wanted to. Well, I think the problem is twofold. One is — Did you object? Wait. Just a minute. You never objected to the question that was presented. I did, Your Honor. We had a sidebar. It was the basis for my objection. And in response to my sidebar, which was — No, I'm talking to the form of the question that was presented to the jury. You didn't suggest a different form of question to the jury. Well, I don't think a question was presented to the jury, Your Honor. Oh, yes, it was. It was presented with a question as to whether or not there was an agency or not. Yeah. To that extent, I agree with you. And wasn't that question fairly — I mean, it wasn't — was that a one-way question, I should put it? I think it was — I think it was not a fair question. And to that extent, I agree with you. The judge said there's an issue that's come up, and we don't know if this person's an agent or not. You have to determine that. That question, yes, was presented. And you didn't object to the way it was presented? Well, I didn't have an opportunity because we had the sidebar, and the judge had indicated this is what I'm going to do. My objection was an ongoing objection, if you will. I told the judge at the sidebar that that was not, in my view, was not a proper way to proceed, that there should have been some evidence at that time already for the proceeding in that way. I think — I'd like to, if I can, because I think this is very important, because you — Judge Cohen, you made a state of the question, which I think is a good one. You said, didn't the jury have the opportunity to see these dresses? Yes, but there's one critical thing that they never saw, and that is what was the original work that these dresses were derived from? Nobody's seen that. And I think it would be unfair to put that burden on the defendant in a trial like that. Your Honor, we came forward with very strong evidence, as Judge Ditter has noted, that the purported author said, I did not make these drawings. And what's important is Mr. Hilliard says, well, she says she didn't make the flowers. Well, if you look at the copyright registration, Your Honor, that's what all those copyright registrations are. Whose burden is that to show that it's not original, it's a knockoff from the original derived drawing? Well, again, there's a presumption of validity of the registration. We came forward with very substantial evidence to rebut that presumption, and that substantial evidence was that here's the inventor, and she's saying, I didn't make these drawings. At that point, it's impossible for us to present the jury with the work, if you will, that those drawings were based on. We tried to get that evidence. We found out that Ms. Dohm's files, the most likely place that evidence would have been is in Ms. Dohm's files. They were never searched. We can't create something out of whole cloth. All we can do is say there's a question here. These things were clearly derived. Nobody knows where they're derived from. It seems to me the burden has to shift in that case to the plaintiff to come forward, and for two reasons. One, explain to the jury, okay, jury, here's the original work, and here's the work in the registration. So the jury can see the difference between the original work and the work in the registration. That's phase one. Phase two, the next one is the jury needs to determine that that difference is present in the accused product, the third piece. The jury couldn't do any of that. Nobody knows how this started. Nobody knows with any specificity what happened. I mean, we have generalities, and I think, you know, if you look at what was stated, it was stated that I moved the flowers. Well, the location of the flowers on the dress is not copyrightable. That's very clear. She added some thread of a different color. Who's going to assess whether that addition of thread is copyrightable? We don't know because we haven't seen the underlying work, and moreover, we don't know if that change in thread is present or not in the infringing work because we don't have the comparison to make. And the only person who could have the obligation of producing that evidence is the plaintiff. There's no way for us to create it. It's their burden. Once we've established that there's a real issue with respect to those registrations, which was done by, number one, the testimony of the purported author, and number two, by the fact that each and every one of those registrations was not properly presented. There was no way for the copyright examiner, in fact, to determine whether there was something original there because he didn't have the underlying work either to look at. Neither was identified nor was it described. And under those circumstances, the burden has to be on them. Otherwise, it basically becomes a situation that the subjective intent of the purported copyright applicant is determinative of validity of the copyright, and that can't be the law. I have a question for you. Yes, Your Honor. Going back to Dominic, what part of his statement was hearsay, and secondly, what difference did it make? Two things, Your Honor. The first part of his statement, all of it was hearsay because he wasn't present. The only way it could not be hearsay is if there was evidence that he was speaking for the defendant. Then it becomes an admission of the party opponent. Why was it hearsay? What did he say that was hearsay? Well, he was in a trial. The only evidence of that, yes. I know that, but what did he say that was hearsay? The question is, what did Ms. Martin say that was hearsay? All right. What did Ms. Martin say about him that was hearsay? And what she said about him is she said- Not everything he says is hearsay. Everything that she says that he says is hearsay, correct? In other words, she's the one testifying at trial. She's telling the jury, Dominic said to me that anything from that point on is hearsay unless it comes in as an exception, correct? All right. And the only exception in this case would have been that Dominic, in fact, could be, as a matter of law, speaking for the defendant. Thank you, Your Honor. We thank both counsels. It's a complicated record and complicated issues, and we will take the matter under advisement. Thank you, Your Honor.